1  JACOB L. HAFTER, ESQ.
   Nevada State Bar No. 9303
2  MICHAEL NAETHE, ESQ.
   Nevada State Bar No. 11222
3  LAW OFFICE OF JACOB HAFTER & ASSOCIATES
   7201 W. Lake Mead Boulevard, Suite 210
   Las Vegas, Nevada 89128
4  Tel: (702) 405-6700
   Fax: (702) 685-4184
5
   Attorney for Plaintiffs
6

7            UNITED STATES DISTRICT COURT

8                  DISTRICT OF NEVADA

9

10 THOMAS KNIPPEL, an individual, and        Case No.: 2:10-cv-001726
   GLORIA KNIPPEL, an individual,
11
                Plaintiffs,
12
        vs.
13

14 SAXON MORTGAGE SERVICES;
   DEUTSCHE BANK NATIONAL TRUST
15 CO.; LENDER PROCESSING SERVICES;      COMPLAINT
   LPS DEFAULT SOLUTIONS, INC.; LPS
16 FORECLOSURE SOLUTIONS, INC.;         Jury Trial Demanded
   QUALITY LOAN SERVICE CORP.;
17 MCCARTHY & HOLTHUS, LLP; MOSS
   CODILIS LLP; DOE Defendants I through
18 X, inclusive; and ROE CORPORATIONS A
   through Z, inclusive,
19

20

21             Defendants.

22      Plaintiffs Thomas and Gloria Knippel, individually and on behalf of all others similarly

23 situated, by and through their attorneys of the law firm Law Office of Jacob Hafter &

24 Associates allege as follows:

25

26                    **<u>NATURE OF THE CASE</u>**

27      1.      Plaintiffs bring this class action against Defendants under the Fair Debt

28 Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA"); the Class Action Fairness

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

Act, 28 U.S.C. §1332(d); the Nevada Deceptive Trade Practices Act, NRS §598, et. seq., and the similar consumer protection laws of other states; and common law claims for wrongful foreclosure, breach of contract, fraud and unjust enrichment on behalf of themselves and all other similarly situated persons who were injured by actions of the defendants.

2.      As set forth below, Defendants Saxon Mortgage Services, Inc., Deutsche Bank National Trust Co. ("Deutsche Bank"), Quality Loan Service Corp., Lender Processing Services, LPS Default Solutions, Inc., and LPS Foreclosure Solutions, Inc. (hereinafter referred to as "the LPS defendants") have engaged in misconduct in connection with debt collection activities associated with residential mortgages, by, inter alia, routinely passing on "attorneys' fees" purportedly charged by their law firms during foreclosure and bankruptcy proceedings knowing that those "attorneys fees" were split with entities which are not law firms.  The defendant attorneys Moss Codilis L.L.P.,  McCarthy & Holthfus, LLP and other "law firms" have similarly engaged in misconduct by sharing attorneys' fees with non-attorneys.

3.      In addition, as they did in this case against the Knipplers, Deutsche Bank and Saxon routinely charge borrowers for other fees which are illegal or illusory, such as late fees after acceleration, property inspections, appraisal fees, and bankruptcy fees and expenses.

4.      Upon information and belief, LPS maintains a network of attorneys for purposes of pursuing repayment of mortgages serviced by Saxon in foreclosure and bankruptcy actions. The attorneys' role in the process was limited by LPS, which set attorneys fees and was compensated by individual counsel for each and every foreclosure and/or bankruptcy matter it referred.

5.      The fees and expenses charged to the plaintiffs and members of the Class during the legal proceedings are illegal, unreasonable and excessive, and are in direct violation of prevailing industry standards and guidelines.

6.      Deutsche Bank and Saxon directly charged plaintiffs and other members of the class for these amounts under the guise of "Corporate Advances" or "Attorneys Fees", which allowed them to pass on fees and costs which would otherwise qualify as unreimbursable overhead of the Lender or Servicer.

7.      Defendants have also passed or attempted to pass on expenses to plaintiffs and other members of the Class which are illusory, in excess of prevailing industry guidelines and/or which cannot be levied against borrowers under either relevant federal or state law including, but not limited to, improper attorneys fees in bankruptcy and foreclosure, late fees after acceleration, property inspection and appraisal fees and other unspecified advances.

8.      When applying for their mortgages, residential loans or lines of credit, Plaintiffs and members of the Class generally receive uniform form loan contracts and notes created by Fannie Mae or another quasi-government entity, setting forth the terms and conditions under the which the loan will be governed.  These uniform loan contracts and notes bound Deutsche Bank and Saxon and contained the parties' rights and obligations, all of which by terms of the contracts were constrained by applicable law.

9.      Defendants acted and continue to act deceptively, unfairly and fraudulently to further their scheme to collect unearned and improper fees and charges from Plaintiffs and members of the Class.

## JURISDICTION AND VENUE

10.      The jurisdiction of the court is invoked pursuant to FDCPA, 15 U.S.C.A. §1692, "federal question" jurisdiction under 28 U.S.C.A. § 1331, and the Class Action Fairness Act, 28 U.S.C. §1332(d).  Jurisdiction of this court for the pendent claims is authorized by 28 U.S.C.A. § 1367.

11.      This Court possesses personal jurisdiction over each Defendant based on each Defendant's presence, transaction of business and contacts within Nevada and/or this District. In addition, this Court has personal jurisdiction over each Defendant as a co-conspirator as a result of the acts of any of the co-conspirators occurring in connection with Defendants' violations of federal laws, state laws and/or the common law.

12.      Venue is proper in this District in that defendants are authorized to do business in Nevada and/or at all times relevant herein have regularly conducted business within this District.

## PARTIES

13.     Plaintiffs Thomas and Gloria Knippel are individuals who currently reside at 2222 Avalon Terrace, Winder, Georgia.  During the relevant period herein, the Knippels resided at 1958 Silver Breeze Avenue, Las Vegas, Nevada 89123.

14.     Upon information and belief, defendant Deutsche Bank National Trust Company is a New York corporation using The Corporation Trust Company of Nevada, 311 S. Division Street, Carson City, Nevada 89703 as their Nevada resident agent.

15.     Upon information and belief, defendant Saxon Mortgage Services Inc. is a Texas corporation using CSC Services of Nevada, Inc., 502 East John Street, Carson City, Nevada 89706 as their Nevada resident agent.

16.     Upon information and belief, defendant Moss Codilis LLP (hereinafter "Moss Codilis") is a Colorado Limited Liability Partnership that is not registered or licensed in the State of Nevada to do business.   Their Colorado registered agent is Michael Sullivan, 6560 Greenwood Plaza Blvd., Suite 100, Englewood, CO, 80111.

17.     Upon information and belief, defendant McCarthy & Holthus, LLP (hereinafter "the McCarthy firm") is a California Limited Liability Partnership using Kristin Schuler-Hintz, Esq., 9510 W. Sahara Avenue, Suite 110, Las Vegas, Nevada 89117 as their Nevada resident agent.

18.     Upon information and belief, defendant Quality Loan Service Corp. (hereinafter "Quality Loan") is a California corporation using Kristin Schuler-Hintz, Esq., 9510 W. Sahara Avenue, Suite 110, Las Vegas, Nevada 89117 as their Nevada resident agent  (hereinafter "Quality Loan").  Upon information and belief, Quality Loan is owned and/or controlled by the principals of the McCarthy firm.

19.     Upon information and belief, defendant Lender Processing Services, LPS Default Solutions, Inc. and LPS Foreclosure Solutions, Inc. are Delaware corporations that are not registered or licensed in the State of Nevada to do business.   Their registered agent in Delaware is The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, DE, 19801.

JACOB HAFTER
& ASSOCIATES

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

20.     The Moss Codilis firm and the McCarthy firm are "debt collectors" within the meaning of and subject to the FDCPA, 15 U.S.C.A. §1692, in that they regularly collect debts on behalf of third parties.

21.     Deutsche Bank is a "debt collector" within the meaning of and subject to the FDCPA, 15 U.S.C.A. §1692 in that, at all times relevant herein, it regularly engaged in the debt collection of mortgages and other loan products, and was not assigned the Knippel's Note and Deed of Trust until after the loan to the Knippels was already in default.

22.     Quality Loan is a "debt collector" within the meaning of and subject to the FDCPA, 15 U.S.C.A. §1692 in that, at all times relevant herein, it regularly engaged in the debt collection of mortgages and other loan products, and was substituted as Trustee on the Knippel's loan after it was already in default.

23.     The true names and capacities, whether individual, corporate, associate, or otherwise, of DOE Defendants I through X and ROE CORPORATIONS A through Z are unknown to Plaintiffs, who therefore sues said Defendants by such fictitious names.  Plaintiffs are informed and believe, and on that basis alleges, that each of the Defendants designated as DOE Defendants and ROE CORPORATIONS are responsible in some manner for the events and occurrences referenced in this Complaint, and/or owes money to Plaintiffs and/or may be affiliated with one of the other Defendants or may claim some interest in the subject matter of this Complaint.  Plaintiffs will ask leave of the Court to amend this Complaint and insert the true names and capacities of DOE Defendants I through X and ROE CORPORATIONS A through Z when the identities of the same have been ascertained, and to join said Defendants in this action.

### PLAINTIFFS' CLASS ACTION ALLEGATIONS

24.     Plaintiffs bring this as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3) on behalf of the following classes of persons who took out residential mortgage loans  (hereinafter "borrowers") from one of the defendants, or which were serviced or outsourced by one of the defendants, or in which one of the defendants acted

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

as a debt collector, and:

        (i)    who within one year preceding institution of this action were told that they owed (or were actually assessed) costs or expenses by defendants or their agent which defendants had no right to collect under the FDCPA; or

        (ii)    who within one year preceding institution of this action were assessed legal fees or expenses in violation of §1692e or §1692f of the FDCPA; or

        (iii)    who within one year preceding institution of this action were assessed legal fees which were then shared with another entity in violation of §1692e or §1692f of the FDCPA; or

        (iv)    who within three years preceding institution of this action were assessed legal fees or expenses which were in violation of §349 of Nevada's _____ and/or similar state consumer laws around the United States; or

        (v)    who within six years before the institution of this action incurred damages as the result of the unjust enrichment of Defendants who received such unauthorized, excessive or illegal fees and charges

        (vi)    who within six years before the institution of this action incurred damages as a result of the fraud perpetuated by defendants in demanding and collecting illegal fees and charges; or

        (vii)    who within six years before the institution of this action incurred damages arising from Defendants' demanding fees and costs in excess of those allowed under the relevant Loan Agreements or applicable statutes; or

25.    Excluded from the Class are the defendants, officers and directors of the defendants, members of their immediate families and their legal representatives, heirs, successors or assigns, as well as any entity in which defendants have or had a controlling interest.

26.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiffs at this time and can only be learned through appropriate discovery, documents provided by defendants

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
& ASSOCIATES

indicate that there are thousands of members of the Class located in this State.

27.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of the federal and state laws complained of herein.

28.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by members of the Class may be small, the expense and burden of individual litigation makes it virtually impossible for the Class members to seek redress on an individual basis for the wrongful conduct alleged.

29.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are the following:

(a)     whether the defendants routinely violated the FDCPA by engaging in a fee-sharing arrangement between  attorneys and non-attorneys, requiring the disgorgement of legal fees;

(b)     whether the defendants routinely violated the FDCPA, by engaging in, and or aiding and abetting, the unauthorized practice of law, requiring the disgorgement of legal fees;

(c)     whether the defendants routinely violated the FDCPA by charging consumer debtors for Property Inspections which were not permitted to be assessed against the borrower under relevant federal or state law;

(d)     whether the defendants routinely violated the FDCPA by charging consumer debtors for late fees after acceleration which were not permitted to be assessed against the borrower under federal or state law;

(e)     whether the defendants routinely violated the FDCPA by charging consumer debtors for attorneys fees which were not permitted to be assessed against the borrower under federal or state law;

(f)     whether the defendants routinely violated applicable bankruptcy law by engaging in the splitting of legal fees with non-attorneys, or by failing to disclose other parties with whom compensation was shared;

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

(g)      whether the defendants routinely violated relevant state law by sharing attorney fees with non-attorneys, requiring the disgorgement of such fees;

(h)      whether defendants routinely and systematically violated the Loan Documents entered into by the parties by reason of the above actions;

(i)      whether Defendants' acts and practices were false, fraudulent, misleading and/or deceptive; and

(j)      whether Plaintiffs and the Class are entitled to injunctive or other equitable relief to remedy Defendants' past and continuing violations of law herein.

## **FACTS**

**Background Facts**

30.      In or about December 2005, plaintiff Thomas Knippel took out a mortgage loan with First NLC Financial Services, LLC under which plaintiff was loaned the principal sum of $298,400.00.   Under the Knippel Deed of Trust, Mortgage Electronic Registration Systems (hereinafter "MERS") was the nominee for First NLC, and the beneficiary under the Deed of Trust.  The Trustee under the loan was Ticor Title of Nevada.

31.      In or around January 2008, Knippel fell behind on his his mortgage payments.

32.      On June 19, 2008, Fidelity National Default Solutions, the predecessor of the LPS defendants, filed a Notice of Breach and Default and Election to Sell (the "Notice of Breach") against Mr. Knippels property in the Clark County Clerk's Office.   Though First NLC was the lender, Ticor was the Trustee and MERS was the beneficiary under the Knippel loan, the Notice of Breach was signed by Jesse Bewley, on behalf of an entity identified as "Quality Loan Service Corp., As Agent for Beneficiary, By: FIS Default Solutions, as Agent."

33.      Under Nevada law, neither Quality Loan Service Corp. nor FIS Default had a right to commence the foreclosure process by signing or filing the Notice of Breach.  Neither Quality nor FIS Default had been substituted as a Trustee for Ticor at that point.  It was not until July 1, 2008 that a "Substitution of Trustee" purportedly substituting Quality Loan

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFFER
ASSOCIATES

Service as the Trustee under plaintiff's Deed of Trust for Ticor Title.

34.     Moreover, according to the notarization, the Substitution of Trustee was not even executed until June 24, 2008, after the Notice of Breach had been executed.

35.     Even if the Substitution of Trustee had been executed before the Notice of Breach was filed, the Notice of Breach was purportedly executed by FIS Default Solutions, which was neither "the beneficiary, the successor in interest of the beneficiary or the trustee", the entities which are required to execute the Notice of Breach under §107.080 of the Nevada Revised Statutes.

36.     Moreover, the Substitution of Trustee was signed by Laura Hescott, who purported to be an Assistant Vice-President of "Saxon Mortgage Services, as attorney in fact" for "Deutsche Bank National Trust Company, as Trustee for IXIS 2006-HE1."  Deutshe Bank was identified in the Substitution of Trustee as "the present beneficiary under said Deed of Trust."

37.     These representations in the Substitution of Trustee were false in numerous respects.  Upon information and belief, Laura Hescott was not an employee of Saxon Mortgage Services at the time she signed the Substitution of Trustee, but rather of one of the LPS entities or their predecessors.

38.     Moreover, as defendants well knew, Deutsche Bank was not "the present beneficiary" of the Knippel loan.  Rather, according to an Assignment of Deed of Trust recorded in the Clark County Clerk's Office on July 16, 2008, the assignment of plaintiff's Deed of Trust and Promissory Note to Deutsche Bank was not executed until July 8, 2008. Thus, for this additional reason, at the time (i) FIS Default Solutions executed the Notice of Breach, and (ii) a purported Vice-President of Saxon Mortgage executed the Substitution of Trustee on behalf of Deutsche Bank appointing Quality Loan Service as Trustee, neither of the executing parties had authority to sign these critical documents on behalf of an entity which had not yet been assigned the Knippel Note and Deed of Trust.

39.     Moreover, as with the "Substitution of Trustee", the "Assignment of Deed of Trust" also contained fundamental misrepresentations.  Like the "Substitution of Trustee", the

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

"Assignment of Deed of Trust" was signed by Laura Hescott, this time identifying herself as a Vice President of "Mortgage Electronic Registration Systems, Inc., as nominee for First NLC Financial Services, LLC", the prior beneficiary under the Knippel Deed of Trust.   Thus, within the same foreclosure, Hescott, an employee of the LPS defendants, twice represented herself as being employed by two other entities with interests in this action – the prior beneficiary under the Knippel Deed of Trust (MERS), and Saxon, the servicer of the purported successor beneficiary.

40.     On April 23, 2009, plaintiff filed for protection under Chapter 13 of the bankruptcy laws in the United States Bankruptcy Court for the District of Nevada.

41.     On May 6, 2009, an entity by the name of Moss Codilis, L.L.P. filed a proof of claim on behalf of entity described as "Deutsche Bank National Turst Co., as Trustee for IXIS Real Estate Capital Trust 2006-HE1, Saxon Mortgage Services, Inc. as Servicing Agent."  The Proof of Claim was executed by Corey M. Robertus who, upon information and belief, is not an attorney.

42.     The address listed for Saxon on the Proof of Claim was actually LPS's address in Mendota Heights, Minnesota.  As part of the alleged amount owed in the Proof of Claim, Moss Codilis, Saxon and Deutsche Bank listed $1,975.74 in late charges, $575.00 in foreclosure fees, $2,865.83 in foreclosure costs, a $7.00 "breach fee", $125.00 for "preparation of Proof of Claim", and $125.00 for "Plan Review."

**Late Fees After Acceleration**

43.     Many of these purported fees and expenses were patently improper.  The late fees sought from plaintiff included hundreds of dollars in late fees after acceleration, which cannot be assessed under the standard form Note and Deed of Trust signed by plaintiff, and have been uniformly found to be illegal by both courts and federal regulatory agencies.

44.     Upon information and belief, defendants Saxon, Deutsche Bank and Moss Codilis routinely charge late fees to delinquent borrowers after their loans have been accelerated, in violation of the loan documents, applicable state law and federal law and

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

prevailing industry practice.

**Illegal Fee-Sharing And the Unauthorized Practice of Law**

45.     In addition, upon information and belief, a portion of the purported legal fees charged by defendants in plaintiff's foreclosure and bankruptcy actions were shared with the LPS defendants, which is absolutely illegal under Nevada law as well as the law of every other state.

46.     Upon information and belief, at all relevant times, neither the original creditor under the plaintiff's loan, nor MERS, nor Deutsche Bank, nor the IXIS Real Estate Capital Trust, nor Saxon Mortgage had a direct contractual relationship with the law firms and/or other entities that represented any of these defendants in foreclosure or bankruptcy matters.

47.     Rather, the typical arrangement worked like this.  Saxon was a party to a Default Services Agreement with the LPS defendants and their predecessor Fidelity National Foreclosure Solutions under which Saxon used attorneys and other entities hired by the LPS defendants in foreclosure and bankruptcy matters involving mortgages in which Saxon was the servicer.  Upon information and belief, this included plaintiff's mortgage.

48.     Upon information and belief, the LPS defendants have a network of foreclosure and bankruptcy attorneys around the country which provide foreclosure and bankruptcy services to entities like Saxon which have contracted with Fidelity.  In each of these bankruptcy and foreclosure matters, the attorneys representing Saxon and the creditor pay a portion of the "legal fees" to the LPS defendants based on the contractual arrangement between Saxon and the LPS defendants, on the one hand, and the LPS defendants and the foreclosure and bankruptcy attorneys, on the other.

49.     Upon information and belief, the law firm of McCarthy & Holthus, LLP, which represented Deutsche Bank and Saxon in plaintiff's bankruptcy action, is (or was) a party to such a contract with the LPS defendants and/or their predecessors.

50.     Upon information and belief, Quality Loan Service, which represented Deutsche Bank and Saxon in plaintiff's foreclosure, is (or was) a party to such a contract with the LPS

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER &
ASSOCIATES

defendants and/or their predecessors.

51.    Upon information and belief, a portion of the fees paid to Quality Loan Service, McCarthy & Holthfus and Moss Codilis for services relating to plaintiff's bankruptcy and foreclosure matters were surreptitiously shared with the LPS defendants and/or other third parties who are not attorneys.

52.    Such fee-sharing between McCarthy & Holthfus and the LPS defendants is illegal under Rule 5.4 of the Nevada Rules of Professional Conduct, as well as similar statutes enacted in every other state.

53.    Moreover, the Fannie Mae guidelines as well as other prevailing industry guidelines also prohibit the sharing of fees between Trustees or other entities representing foreclosing creditors and outsourcers like the LPS defendants.

54.    On June 22, 2009, the McCarthy firm filed a Motion for Relief from Stay on behalf of Deutsche Bank, Saxon Mortgage and the IXIS Real Estate Capital Trust 2006-HE1 in plaintiff's bankruptcy.

55.    In the Motion for Relief, the McCarthy firm, Deutsche Bank, Saxon Mortgage and the IXIS Real Estate Capital Trust 2006 alleged that $2,448.09 in late charges were then due, as well as $146.50 in property inspections, $2,784.49 in advances, a $235 appraisal fee, $3,440.83 in Foreclosure and Attorney's Fees & Costs, $250.00 in Bankruptcy fees & Costs, and $7.00 for "Other."

56.    Each of these purported fees and expenses were improper, in whole or in part, under well-settled case-law, decisions by U.S. regulatory agencies, and/or prevailing industry authority because: (i) the foreclosure and bankruptcy attorney's fees purportedly owed by plaintiff were secretly shared with non-attorneys; (ii) the purported property inspections were unnecessary, and in violation of prevailing industry guidelines; (iii) the purported "advances" and other alleged "costs" were never identified, much less itemized

57.    Moreover, as part of the motion, the McCarthy firm, Deutsche Bank, Saxon Mortgage and the IXIS Real Estate Capital Trust 2006 alleged that $800.00 in post-petition bankruptcy fees and costs were owed by the plaintiff.  Again, these purported fees were

improper, in whole or in part because, unbeknownst to either plaintiff or the court, they were secretly shared with the LPS defendants or other non-attorneys.

58.     On July 24, 2009, based on the motion for relief from stay made by the defendants, the bankruptcy stay preventing foreclosure of plaintiff's home was terminated.

59.     On September 14, 2009, the LPS defendants and/or their predecessors and Quality Loan Service filed a Notice of Trustee's Sale in the Clark County Clerk's Office indicating that plaintiff's home would be sold on October 7, 2009.

60.     On October 7, 2009, defendants sold plaintiff's home in foreclosure to SERJ2 LLC, with proceeds from the sale being used to pay the attorneys' fees and expenses described above.

61.     On October 19, 2009, defendants recorded a Trustee's Deed transferring plaintiff's home to SERJ2 LLC.

62.     Plaintiff was not aware at the time that the defendants had not followed correct foreclosure procedures on his home, or had demanded and collected from him purported attorneys fees and other costs and expenses which were illegal.  In the winter of 2010, plaintiff first learned that the defendants engaged in improper conduct in connection with the foreclosure of his home, and in charging and collecting purported legal fees and expenses from the October 2010 sale of his home in foreclosure.

## FIRST CLAIM FOR RELIEF
### (Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e and 1692f Against Quality Loan Service, McCarthy & Holthfus, Saxon Mortgage and Deutsche Bank)

63.     Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

64.     The amounts sought from plaintiff by defendants are debts subject to the FDCPA.

65.     Defendants Quality Loan Service, McCarthy & Holthfus, Saxon Mortgage and Deutsche Bank are debt collectors subject to the FDCPA.

66.      In failing to comply with Nevada's procedures for nonjudicial foreclosure, defendants Quality Loan Service, Saxon Mortgage and Deutsche Bank engaged in the wrongful foreclosure of Plaintiffs' home, violating §1692e and §1692f of the FDCPA.

67.      In attempting to collect attorneys' fees and other fees and expenses which were not owed or could not be charged, defendants Quality Loan Service, McCarthy & Holthfus, Saxon Mortgage and Deutsche Bank violated §1692e of the FDCPA.

68.      In actually collecting attorneys' fees and other fees and expenses which were not owed or could not be charged, Quality Loan Service, McCarthy & Holthfus, Saxon Mortgage and Deutsche Bank violated §1692f of the FDCPA.

69.      By reason of the aforesaid violations, defendants Quality Loan Service, McCarthy & Holthfus, Saxon Mortgage and Deutsche Bank are liable to the above Plaintiffs for statutory damages, actual damages to be established at trial and attorneys' fees and costs in accordance with 15 U.S.C. § 1692k.

70.      Plaintiffs have been required to retain the law firm of Law Offices of Jacob Hafter & Associates to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to Federal Rules of Civil Procedure, and all other applicable law.

## SECOND CLAIM FOR RELIEF
### (Common Law Fraud Against Quality Loan Service, McCarthy & Holthfus, Saxon Mortgage, Deutsche Bank, Moss Codilis )

71.      Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

72.      As alleged herein, defendants McCarthy & Holthfus, Moss Codilis and Quality Loan Service intentionally, willfully, knowingly and recklessly made representations in the Nevada foreclosure action which were false, resulting in the wrongful sale of plaintiff's home.

73.      As alleged herein, defendants McCarthy & Holthfus, Moss Codilis and Quality Loan Service intentionally, willfully, knowingly and recklessly charged and collected fees from plaintiff which were shared between attorneys and non-attorneys, and were therefore illegal under Rule 5.4 of the Nevada Rules of Professional Conduct as well as the laws of every

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER &
ASSOCIATES

other state.

74.     Defendants Saxon Mortgage, Deutsche Bank, Quality Loan Service, McCarthy & Holthfus and Moss Codilis intentionally, willfully, knowingly and recklessly charged and collected such fees from plaintiff despite knowing that Fannie Mae guidelines as well as other prevailing industry regulations prohibited the sharing of fees between Trustees or other entities representing foreclosing creditors, on the one hand, and outsourcers like the LPS defendants, on the other.

75.     Defendants knew that its illegal sharing of fees were misrepresented in court proceedings as attorneys fees, thereby preventing courts and debtors from determining whether such fees were reasonable, and causing plaintiff and the Class to be compelled to pay such shared and excessive fees.

76.     Defendants used unequal power and knowledge to take advantage and defraud consumers into paying improperly shared fees.

77.     Plaintiffs and the other members of the Class paid defendants' illegal sharing of fees without knowing that such fee sharing was illegal.

78.     Those statements, representations, and omissions were made for the purpose of inducing reliance thereon by Plaintiffs and the Class to pay the improperly shared fees not due to Defendants under applicable law or under the terms of the relevant loan documents

79.     Plaintiffs and the other members of the Class had a right to rely on, and did reasonably rely on the statements and misrepresentations made in the legal proceedings.

80.     Each of Defendants' misrepresentations and omissions were material, in that Plaintiffs and the Class would not have paid the illegal fees if they had known that the statements and representations of Defendants were false, misleading, incomplete, unfair and untrue.

81.     Each of the above misrepresentations, misleading statements, and omissions made by Defendants were false, misleading, incomplete, and untrue, and were known or should have been known by Defendants to be false, misleading, incomplete, and untrue when made.

82.     Each misrepresentation, misleading statement, and omission was made to

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

induce Plaintiffs and the Class to pay fees and charges not due Defendants.

83.    Plaintiffs and the other members of the Class had no knowledge of the falsity, incompleteness, or untruth of the statements and representations of Defendants when they paid these fees and charges to Defendants.

84.    By reason of Defendants' misrepresentations, misleading statements, and omissions, Plaintiffs and the other members of the Class suffered financial injuries.

85.    Defendants' actions were willful, wanton, reckless, and malicious, and further show a complete and deliberate indifference to, and conscious disregard for the Plaintiffs.  The Plaintiffs are therefore entitled to an award of punitive or exemplary damages in an amount to compensate the Plaintiffs for mental anguish, humiliation, and outrage that the Plaintiffs have suffered due to the Defendants' conduct and to deter Defendants' and other organizations and individuals from like conduct in the future.

86.    Plaintiffs have been required to retain the law firm of Law Offices of Jacob Hafter & Associates to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to Federal Rules of Civil Procedure, and all other applicable law.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract Against Deutsche Bank, IXIS Real Estate Capital Trust 2006-HE1)

87.    Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

88.    The Deed of Trust between defendants and Plaintiffs specifies the steps to be taken before defendants could sell Plaintiffs' home (Deed of Trust, ¶22), and limits the fees and expenses which could be charged to those which are reasonable and not prohibited by applicable law.  (Deed of Trust, ¶14, 22).

89.    Defendants breached the Deed of Trust by failing to satisfy the steps necessary to initiate foreclosure of Plaintiffs' home set forth in Paragraph 22 of the Deed of Trust.

90.    Defendants breached the Deed of Trust in charging alleged legal fees, property inspections, late charges and other alleged costs of collection in violation of applicable law and

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER & ASSOCIATES

prevailing industry practice.

91.     As a result, Plaintiffs are entitled to a return of the fees and costs they were required to pay in circumstances where such fees, costs and interest were not allowed to be collected under these agreements.

92.     Plaintiffs have been required to retain the law firm of Law Offices of Jacob Hafter & Associates to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to Federal Rules of Civil Procedure, and all other applicable law.

## FOURTH CLAIM FOR RELIEF
### (Wrongful Foreclosure Against Quality Loan Service, Saxon Mortgage, Deutsche Bank, and IXIS Real Estate Capital Trust 2006-HE1))

93.     Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

94.     Chapter 107 of the Nevada Revised Statutes governs non-judicial foreclosures in the State of Nevada.

95.     The Notice of Default was filed on or about June 19, 2008 in the Clark County Recorder's Office.

96.     The Notice of Default was signed by Jesse Bewley, on behalf of an entity identified as "Quality Loan Service Corp., As Agent for Beneficiary, By: FIS Default Solutions, as Agent."

97.     When the Notice of Default was filed, neither Quality Loan Service Corp. nor FIS Default had a right to commence the foreclosure process by signing or filing the Notice of Breach, as neither Quality nor FIS Default had been substituted as a Trustee for Ticor at that point.

98.     While a Substitution of Trustee was recorded purportedly substituting Quality Loan Service as the Trustee under plaintiff's Deed of Trust for Ticor Title, according to the notarization, the Substitution of Trustee was not executed until June 24, 2008, approximately a week after the Notice of Breach had been executed

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

99.   Further, Defendants, or their agents or representatives posted the Eviction Notice on the Property approximately a week before the Notice of Sale was filed.

100.  Even if the Substitution of Trustee had been executed before the Notice of Breach was filed, the Notice of Breach was purportedly executed by FIS Default Solutions, which was neither "the beneficiary, the successor in interest of the beneficiary or the trustee", the entities which are required to execute the Notice of Breach under §107.080 of the Nevada Revised Statutes.

101.  Moreover, the Substitution of Trustee was signed by Laura Hescott, who purported to be an Assistant Vice-President of "Saxon Mortgage Services, as attorney in fact" for "Deutsche Bank National Trust Company, as Trustee for IXIS 2006-HE1." Deutshe Bank was identified in the Substitution of Trustee as "the present beneficiary under said Deed of Trust."

102.  These representations in the Substitution of Trustee were false in numerous respects.  Upon information and belief, Laura Hescott was not an employee of Saxon Mortgage Services at the time she signed the Substitution of Trustee, but rather of one of the LPS entities or their predecessors.

103.  Moreover, as defendants well knew, Deutsche Bank was not "the present beneficiary" of the Knippel loan.  Rather, according to an Assignment of Deed of Trust recorded in the Clark County Clerk's Office on July 16, 2008, the assignment of plaintiff's Deed of Trust and Promissory Note to Deutsche Bank was not executed until July 8, 2008. Thus, for this additional reason, at the time (i) FIS Default Solutions executed the Notice of Breach, and (ii) a purported Vice-President of Saxon Mortgage executed the Substitution of Trustee on behalf of Deutsche Bank appointing Quality Loan Service as Trustee, neither of the executing parties had authority to sign these critical documents on behalf of an entity which had not yet been assigned the Knippel Note and Deed of Trust.

104.  Plaintiffs seek to exercise their remedy under NRS 107.080, and have this Court declare the sale that occurred on or about July 24, 2010 void.

105.  Plaintiffs have no other adequate or speedy remedy at law.

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

106. A declaration of rights, responsibilities, and obligations of Plaintiff and Defendants are essential to determine the respective rights and obligations of the parties hereto.

107. Plaintiffs have been required to retain the law firm of Law Offices of Jacob Hafter & Associates to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to Federal Rules of Civil Procedure, NRS Chapter 107, and all other applicable law.

## FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment Against All Defendants)

108. Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

109. Defendants charged and received compensation for attorneys' fees, outsource fees and other alleged fees and costs of collection allegedly incurred in connection with defendants' collecting on plaintiffs' loans.

110. Such attorneys' fees, outsource fees and other fees and costs of collection were illegal or excessive.

111. Defendants had no right under contract or statute to charge for attorneys' fees, outsource fees, and other alleged costs of collection that had not been incurred by defendants, were excessive, or were otherwise unauthorized.

112. It would be inequitable for defendants to retain from plaintiffs payment for those amounts which the defendants had no right to charge or collect, and defendants have been unjustly enriched by doing so.

113. As a result of the foregoing, Plaintiffs seek restitution in the amounts charged for such attorneys' fees, outsource fees, disbursements and other alleged fees and costs of collection, which they had no right to collect, plus interest and costs incurred.

114. Defendants' actions were willful, wanton, reckless, and malicious, and further show a complete and deliberate indifference to, and conscious disregard for the Plaintiffs. The Plaintiffs are therefore entitled to an award of punitive or exemplary damages in an amount to compensate the Plaintiffs for mental anguish, humiliation, and outrage that the Plaintiffs have

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

1    suffered due to the Defendants' conduct and to deter Defendants' and other organizations and

2    individuals from like conduct in the future.

3         115.    Plaintiffs have been required to retain the law firm of Law Offices of Jacob

4    Hafter & Associates to prosecute this action and are entitled to recover attorney fees and costs

5    incurred pursuant to Federal Rules of Civil Procedure, and all other applicable law.

6

7                              **SIXTH CLAIM FOR RELIEF**
     **(Civil Conspiracy Against Quality Loan Service, McCarthy & Holthfus, Saxon Mortgage,
8                               Deutsche Bank, Moss Codilis)**

9         116.    Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as

10   if they were fully set forth herein.

11        117.    Defendants Saxon Mortgage and the LPS defendants are and/or were parties to

12   an agreement under which LPS was secretly paid a portion of the purported "legal fee" in

13   every foreclosure or bankruptcy matter involving mortgages in which Saxon was the servicer.

14   Dividing such fees under the guise of legal fees is prohibited by Nevada law and the laws of

15   every other state, and by controlling guidelines published by Fannie Mae.

16        118.    Defendants Saxon Mortgage and the LPS defendants entered into this

17   arrangement so that:  (i) LPS would be able to recover fees from mortgage debtors which LPS

18   was not entitled to receive;  (ii) Saxon, Deutsche Bank, and/or IXIS Real Estate Capital Trust

19   2006-HE1 could avoid having to pay such fees to LPS;  (iii) Saxon, Deutsche Bank, and/or

20   IXIS Real Estate Capital Trust 2006-HE1 could avoid having to disclose that they were

21   seeking recovery of expenses which would otherwise constitute their internal office overhead,

22   which are typically unreimbursable.

23        119.    To facilitate the scheme, the LPS defendants entered into separate agreements

24   with Quality Loan Service, Moss Codilis, McCarthy & Holthfus and other law firms and

25   trustees on LPS's own behalf and on behalf of Saxon Mortgage, Deutsche Bank, and/or IXIS

26   Real Estate Capital Trust 2006-HE1, under which Quality Loan Service, Moss Codilis,

27   McCarthy & Holthfus and the law firms and trustees agreed to (i) to charge what they

28   characterized as "legal fees" and/or "trustee's fees" in matters in which they represented, either

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER &
ASSOCIATES

directly or indirectly, Saxon Mortgage, the LPS defendants, Deutsche Bank, and/or IXIS Real Estate Capital Trust 2006-HE1; (ii) to pay a portion of those "legal fees" and/or "trustee's fees" to the LPS defendants for each matter referred; and (iii) to keep such fee-sharing and contractual arrangements secret from the debtor, bankruptcy and foreclosure courts, other creditors and bankruptcy trustees.

120.   Such arrangements are illegal under Nevada law, and under Fannie Mae and other industry guidelines to which the defendants are bound.

121.   Defendants have entered into such agreements, and have engaged in the concerted action described above, in order to obtain fees and expenses from plaintiff and other members of the class to which they were not entitled.

122.   As a result, plaintiff and the members of the class have suffered damage.

123.   Defendants' actions were willful, wanton, reckless, and malicious, and further show a complete and deliberate indifference to, and conscious disregard for the Plaintiffs.  The Plaintiffs are therefore entitled to an award of punitive or exemplary damages in an amount to compensate the Plaintiffs for mental anguish, humiliation, and outrage that the Plaintiffs have suffered due to the Defendants' conduct and to deter Defendants' and other organizations and individuals from like conduct in the future.

124.   Plaintiffs have been required to retain the law firm of Law Offices of Jacob Hafter & Associates to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to Federal Rules of Civil Procedure, and all other applicable law.

### SEVENTH CLAIM FOR RELIEF
**(Deceptive Business Practices / Unfair Trade Practices Against LPS Defendants)**

125.   Plaintiff realleges and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

126.   NRS 598.0923 defines "deceptive trade practices" as "when in the course of his or her business or occupation he or she knowingly: 1. Conducts the business or occupation without all required state, county or city licenses."

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER &
ASSOCIATES

127.    NRS 76.100(1) states a "person shall not conduct business in this State unless and until the person obtains a state business license issued by the Secretary of State."

128.    NRS 76.020 defines what constitutes doing business in Nevada for the purposes of a Chapter 76 business license.

129.    LPS Defendants, and their predecessors, engaged in various acts related to the foreclosure on Plaintiffs' home in 2009.

130.    LPS Defendants did not and do not possess a business license pursuant to NRS Chapter 76 during the relevant times of this matter.

131.    NRS 598.0953 states that "[e]vidence that a person has engaged in a deceptive trade practice is prima facie evidence of intent to injure competitors and to destroy or substantially lessen competition."

132.    Accordingly, LPS Defendants are engaging in unfair business practices.

133.    As a result of LPS Defendants' actions, Plaintiffs have been injured and is entitled to damages.

134.    Defendant's actions were willful, wanton, reckless, and malicious, and further show a complete and deliberate indifference to, and conscious disregard for the laws of the State of Nevada and for Plaintiff.  The Plaintiff is therefore entitled to an award of punitive or exemplary damages in an amount to compensate the Plaintiff and to deter Defendants' and other organizations and individuals from like conduct in the future.

135.    Plaintiffs have been required to retain the law firm of Law Offices of Jacob Hafter & Associates to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to Federal Rules of Civil Procedure, and all other applicable law.

## EIGHTH CLAIM FOR RELIEF
### (Injunctive Relief Against All Defendants)

136.    Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

137.    As discussed herein, Defendants have been engaging in various activities which are illegal or improper.

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

138.   Plaintiff seeks equitable relief in the form of an injunction and restitution in that Defendants continue to engage in the unlawful conduct and have caused and continue to cause harm and separate injuries to the Class each and every time Defendants, or any one of them, imposes and/or collects unlawful fees and charges on the Class or when Defendants engage in false, fraudulent, misleading, unfair, deceptive and unconscionable conduct to perpetrate or conceal their unlawful conduct.

139.   Plaintiffs have been required to retain the law firm of Law Offices of Jacob Hafter & Associates to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to Federal Rules of Civil Procedure, and all other applicable law.

## JURY DEMAND

The Plaintiffs demand a trial by jury on all issues in this case.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs request the Court to enter judgment in favor of the Plaintiffs and against Defendants and to order the following relief:

1.   Determining that this action is a proper class action, certifying Plaintiffs as class representatives under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and appointing their counsel as class counsel;

2.   Awarding compensatory and statutory damages in favor of Plaintiffs and the other Class Members against the defendants for all damages sustained as a result of the defendants' wrongdoing, in an amount to be established at trial, including interest thereon;

3.   Enjoining defendants from engaging in future actions which violate the FDCPA, state statutes, or the form agreements between defendants and their borrowers;

4.   Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees; and

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

5.      Awarding such other and further relief as the Court deems appropriate.

Respectfully submitted this 5th day of October, 2010.

LAW OFFICES OF JACOB HAFTER & ASSOCIATES

By _____

JACOB L. HAFTER, ESQ.
Nevada Bar No. 9303
MICHAEL K. NAETHE, ESQ.
Nevada Bar No. 11222
7201 W. Lake Mead Blvd, Ste 210
Las Vegas, Nevada 89128
Ph: (702) 405-6700
Fax: (702) 685-4184
jhafter@hafterlaw.com
*Attorneys for Plaintiffs (Local Counsel)*


*and*


[Pending Pro Hac Vice admission]


By _____/s/ Paul Grobman_____

PAUL GROBMAN, ESQ.
NY Bar No.: 2192649
555 5th Avenue #17
New York, NY 10017-9254
Ph: (212) 983-5880
grobtown@aol.com
*Attorneys for Plaintiffs (Lead Trial Counsel)*